16024

BETHEL METHODIST EPISCOPAL CHURCH v. CITY OF GREENVILLE

(45 S. E. (2d) 841)

*Mr. W. G. Sirrine,* of Greenville, for Appellant, cites:

444

*Mr. A. C. Mann,* of Greenville, for Respondent, 

*Mr. W. G. Sirrine,* of Greenville, for Appellant, in reply,

December 29, 1947.

FISHBURNE, J.: This is a suit in equity, brought by a property owner suing in its own right, to declare void a resolu-

tion passed by the city council of Greenville on November 24, 1942. The resolution ordered and directed the vacation and discontinuance of that part of Bethel Street which extends Westward from North Street a distance of 253 feet to the property of the plaintiff. From this point the street turns diagonally in a Southerly direction for about 100 feet along the Eastern property line of the plaintiff, and then runs at right angles in a Westerly direction for several blocks.

There appears to be some difference of opinion as to whether or not this 100 foot strip extending along the Eastern line of the plaintiff's property constitutes a short mid-section of Bethel Street, or is a part of an unnamed street. But we think it may reasonably be inferred from an examination of the city map that it constitutes a part of Bethel Street. Following the adoption of the resolution, the city placed a barricade at the Western end of the closed portion of the street, thus obstructing all access to the church from North Street.

Plaintiff is a corporation organized by colored citizens under the laws of South Carolina for the purpose of conducting religious worship as a branch of the Methodist Church. Some time during the year 1907 it purchased a lot in the city of Greenville on Bethel Street and built a church thereon, where the congregation regularly worships. This property abuts Bethel Street on the South, and its Eastern line is opposite the barricade. The complaint alleges that the closed portion of Bethel Street constitutes the best and only convenient and practicable outlet from the property of the plaintiff to North Street, a paved thoroughfare upon which is operated a regular electric bus line for the transportation of passengers; and that the city was without legal authority to close it. That the action of the city in vacating this street was unreasonable, arbitrary and capricious, resulting in serious damage to its property rights. It is further alleged that the closing of this street compels members of the congregation to go by a complicated, circuitous route to and from their

church services four and a half times farther, over dark, narrow and unimproved roads.

By its answer, the defendant alleged that Bethel Street was closed after investigation and a hearing had thereon, in the exercise of the authority granted to the city under the provisions of Section 7455 of the Code. That the vacation was advisable or necessary for the improvement and convenience of the city and for the proper preservation of law and order. It was further alleged that Bethel Street enters North Street at a dangerous point on a grade, and that the use of the street for pedestrian and vehicular traffic constituted a hazard to the traveling public. The defendant also interposed the defense that the plaintiff is not an abutting property owner on that portion of Bethel Street ordered to be closed, and that it has an adequate remedy at law.

The city of Greenville likewise demurred to the complaint, charging that it failed to allege facts sufficient to show that the city lacked the power and authority under the laws of this state to vacate the street in question. In its order overruling the demurrer, the court expressed the opinion that "plaintiff's complaint sufficiently questions the exercise of the discretionary power conferred upon city council by Section 7455 and, therefore, defendant's demurrer * * * is hereby overruled".

The cause was thereafter referred to the master of Greenville County to take the testimony and pass upon the issues. Considerable testimony was taken, after which the master filed his report in which he specifically found all issues in favor of the city and recommended that the complaint be dismissed. Upon exceptions being taken to the circuit court, the master's report was confirmed in a brief order, and all exceptions thereto were overruled. The plaintiff is appealing now from the judgment of the circuit court.

Before proceeding to a consideration of the questions raised by the appeal, it will be necessary to give the factual background of this case as shown by the evidence taken before the master.

In 1936, the respondent by resolution abandoned Bethel Street from North Street to the point where it reaches the plaintiff's property, a distance as heretofore stated of approximately 253 feet. This street had been dedicated to the public use and used continuously for more than 40 years. It appears that one L. P. Thomason owned and resided on a corner lot fronting on North Street and running back on Bethel Street a distance of 200 feet. As soon as the city by resolution had abandoned this part of Bethel Street, Thomason blocked the Western end of it at a point immediately opposite the Eastern boundary of the church property, thus cutting off all access from that direction to North Street. An action was thereupon brought by the plaintiff in the present case against Thomason for an injunction, and for an order requiring him to remove the obstruction erected by him upon the street. The case was heard in the circuit court and by order of that court, Thomason was permanently enjoined from obstructing "in any way the use by the public of Bethel Street". This order was dated September 12, 1942.

On October 20, 1942, Thomason, along with two other persons who owned property on North Street, at the mouth of Bethel Street, filed the following petition with the city of Greenville: "We, the undersigned, being the owners of those certain lots of land on the north side of East North Street Extension, in the City of Greenville, South Carolina, through which a street or alley was heretofore laid out or set apart, do hereby petition and request the City Council of the City of Greenville to close said alley since the closing of same, in our opinion, is necessary for the improvement or convenience, or safety of said City and we do further expressly waive any claim for damages against the City of Greenville or any of its officers or agents to our property by reason of the closing of said alley or street. Said alley or street is sometimes designated as Bethel Street".

In response to this petition, and after an informal hearing, the respondent on November 24, 1942, passed the resolution which is under attack in the present action. It reads as fol-

lows: "Be it further resolved, that so much of Bethel Alley or Street as extends on its South side 253.4 feet, on its North side 243.8 feet from E. North Street Extension be and is hereby closed, all property owners abutting said portion having given their consent thereto."

As heretofore stated, after the adoption of this resolution the city then proceeded to barricade the street.

The evidence offered by the plaintiff tends to prove that the congregation of this Negro church numbers 75 or 80 members, and the church is located in the center of a thickly settled Negro section of the city. The most available approach to the church from the East is by way of that portion of Bethel Street which has been ordered closed. This section of the street constitutes the best inlet and outlet because it affords access to North Street, which is a paved thoroughfare furnishing electric bus transportation. Another access to the church property from the North Street side is a roundabout way four an a half times farther, by an old railroad cut, which is unfrequented, unimproved, and unlighted. There is one more way wholly through a thick growth of dark woods, and it was shown that a woman while using this route through the woods a short time previous to the trial of this case had been criminally assaulted.

Plaintiff's evidence further shows that since the city erected the barricade on the church side of Bethel Street, it has been cleared and improved by L. P. Thomason from the North Street entrance to the rear of his lot, as a private way, and as private entrance to the rear of his property; it now appears to be exclusively used by him.

The record also shows that at the hearing held before the city council some time prior to the passage of the vacation resolution, Mr. Thomason and his attorney were present; and that the pastor of this Methodist Church and several of the church trustees, with their attorney, were likewise present. And each side presented grounds and reasons why the portion of Bethel Street in question should be closed or should remain open.

Now, since the street has been vacated and blocked by order of the city, attendance on the church services at night has declined more than 50 per cent. because of the practical impossibility of using the circuitous routes after dark. From other directions, there are means of gaining access to the church by way of dark and unimproved alleys, which the witnesses describe as ways of travel but not streets. All of the witnesses for the plaintiff testified that the portion of Bethel Street extending from North Street to the church is the best and only accessible avenue of approach. Subsequent to the closing of the street, the postal authorities discontinued the delivery of mail in the isolated section.

Upon the close of the plaintiff's case, the respondent announced that it would offer no evidence, and it now takes the position that it was fully authorized under Section 7455 of the Code in closing the street in question. We consider first, therefore, the attack which the appellant church makes upon the validity of the resolution under which the street was closed.

Section 7455 of the Code provides, with reference to cities containing more than 5,000 inhabitants, that the city council is authorized to lay out and open streets, to close up, widen, or to otherwise alter those now in use, or those which may hereafter be established, whenever, in their judgment, the same may be necessary for the improvement or convenience of the city, provided that they shall first pay damages, should any be claimed, to the landowner or owners through whose premises such street may run. This section likewise provides the method by which the amount of such damages may be ascertained should the parties fail to reach an agreement thereabout.

It will be noted that the vacation resolution in the present case merely states that the portion of Bethel Street in question shall be closed, "all property owners abutting said portion having given their consent thereto." The resolution does not say, nor is there any evidence in the record to establish, that this part of Bethel Street was closed for the

reason that the public interest required it, or that it was closed for the proper preservation of law and order, and the safety of the traveling public, as alleged in the answer. The evidence tends to prove without contradiction, that the street was closed at the instance of a small group, especially L. P. Thomason, who thereafter took possession of it and used it as a private driveway to the rear of his lot.

The first contention of the appellant, Bethel Methodist Episcopal Church, is that the resolution of vacation was adopted without any just cause or legal grounds; that in so doing the city council acted contrary to law, and that its action was arbitrary, capricious, and constituted an abuse of discretion.

In dealing with the question of the exercise of discretion in closing streets, the general rule is that courts will not interfere with the exercise of these discretionary powers by a municipal body except in cases of fraud or clear abuse of power. *Grady v. City of Greenville,* 129 S. C. 89, 123 S. E. 494.

It is said in 43 C. J. S., Injunctions, § 111: "* * * As long as they (municipal council) have acted honestly, the fact that a mistake has been made in the exercise of this discretion, or that the acts are hasty and ill-advised and not for the best interests of the inhabitants, constitute no ground for an injunction; but in case of an abuse of discretion whereby property rights are or will be injuriously affected the acts of such officers may be enjoined. It is only where it is shown clearly that the municipal corporation or its officers have transcended the power vested in them, or that there has been abuse of discretion, that a court of equity will interfere".

The same principle is announced in 25 Am. Jur. Highways Sec. 120, Page 418. See Annotation, 46 Am. St. Rep. Page 493.

A municipal corporation holding and controlling its streets in trust for the use and benefit of the general public, without power of converting them to any other

use, it follows necessarily, that the right to vacate a street is to be exercised only when the municipal authorities, in the exercise of a sound official discretion, determine that the street is no longer required for the public use or convenience. But no such reasons were assigned for the closing of Bethel Street. There is nothing to show that the public interests would be subserved by closing this arterial highway leading to plantiff's property.

On the face of the record, with no evidence to the contrary, we are constrained to hold that the action of the City of Greenville constituted a clear abuse of power, however unintentional, which seriously affected fundamental property rights of the plaintiff, resulting in special and irreparable injury.

Irreparable injury as used in the law of injunction, does not necessarily mean that the injury is beyond the possibility of compensation in damages; and the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere in a case where the nuisance is a continuous one. Elliott on Roads and Streets, Page 497. This court has recently held in a related case that injunction will lie to prevent obstruction of a public street or alley if the complaining party has no adequate remedy at law. *Brown v. Hendricks,* S. C., 45 S. E. (2d) 603, December 5, 1947. And see Annotations, 46 Am. St. Rep. page 493; 11 Ann. Cas. page 287.

Though we are required to apply the general rule of presumptive validity of official action, and assume that a consideration of public interests prompted the resolution vacating a part of Bethel Street, it affirmatively appears here that such was not in fact the foundation of the city council's action. The only reasonable inference to be drawn, in the absence of opposing evidence, is that the street was closed for the sole benefit of certain property owners whose property abutted thereon.

It would seem to be clear that the plaintiff has suffered a special injury different in degree and in kind from that suffered by the general public, and for this reason it may maintain its own suit for redress. This rule has been illustrated and applied in numerous cases. *Gray & Shealy v. Charleston & W. C. R. Co.,* 81 S. C. 370, 62 S. E. 442; *City of Rock Hill v. Cothran,* 209 S. C. 357, 40 S. E. (2d) 239; *Brown v. Hendricks,* S. C., 45 S. E. (2d) 603.

We said in *City of Rock Hill v. Cothran, supra* (209 S. C. 357, 40 S. E. (2d) 242): "The law undoubtedly is that a municipality cannot vacate a street or a part thereof for the sole purpose of benefiting an abutting owner; and that the power to vacate streets cannot be exercised in an arbitrary manner, without regard to the interest and convenience of the public or individual rights. The mere fact, however, that the vacation was at the instigation of an individual or a private corporation who owns abutting property, to enable him or it to use the vacated portion in his business, does not of itself invalidate the vacation, nor constitute such fraud or abuse of discretion as, in the absence of any further showing, will authorize a court of equity to interfere and declare the vacating resolution to be void. McQuillin Munic. Corp., 2nd Ed., Vol. 4, Sec. 1520".

It was further stated in the above case that the fact that some private interest may be served incidentally will not invalidate the vacating resolution. But it must appear clearly that no consideration other than that of the public interests could have prompted the action. It may be noted by way of contrast, that in the case of *City of Rock Hill v. Cothran, supra,* there was ample evidence before the city council which warranted it in closing the street in question, for the public good, although it there appeared that the chief beneficiary was a private corporation. The only logical result of the vacation resolution in this case was to exclude the public, and to directly benefit L. P. Thomason, who

promptly upon the passage of the resolution commenced to use this alley as his own private way.

The respondent contends that the appellant's property does not abut upon the obstructed or vacated portion of Bethel Street, and that it has ample means of access to its property by way of other public ways and streets. And on this ground it is said that the Methodist Church is simply one of the general public to suffer an inconvenience common to all; though it may by reason of proximity suffer a greater degree of inconvenience than others. The case relied upon to support this argument is *Cherry v. Rock Hill,* 48 S. C. 553, 26 S. E. 798.

In that case it was alleged that the city council of Rock Hill closed a section of Park Avenue which passed through the grounds of Winthrop College, and upon which the residence of the plaintiff abutted. The court pointed out, however, that while the complaint spoke of the act of city council as closing Park Avenue, the record really showed that the street was not closed, but simply that its route was altered. And it may clearly be inferred from the opinion in that case that although a section of the street upon which the plaintiff's residence was located was closed, there were other available and improved streets, although circuitous, leading from his residence to the business section of the city. It was held under those circumstances that the plaintiff did not suffer such special and peculiar damage as would enable him to maintain an action against the city for damages or injunction.

It appears here, however, that not only is the closed portion of Bethel Street the chief and most available means of access to and from this colored Methodist Church, but it has no other adequate inlet or outlet in any other direction—except through an old railroad cut, four and a half times farther away, and other dark, unlighted, and unpaved ways through alleys or woods. It seems to us that there is a vivid distinction between the facts in this case and those shown to exist in *Cherry v. Rock Hill, supra.*

Nor is the contention of respondent valid, insofar as the issues here are concerned, that the appellant should be excluded from all redress because its church property does not abut directly on the vacated portion of Bethel Street. The evidence shows that a barricade was placed by respondent at the extreme Western end of this vacated street, 25 feet away from and facing the property of the appellant. Whether the short strip of street 100 feet in length constituting the Eastern boundary of plaintiff's property, which adjoins and connects with the obstructed end of the street in question, is a continuous portion of Bethel Street or not, matters little. To all intents and purposes, the plaintiff's property abuts Bethel Street. Annotation, 68 A. L. R. page 1285.

The vacating resolution recites that the street was closed, all property owners abutting said portion having given their consent thereto. But even if Mr. Thomason and the two co-signers of the petition addressed to the city council, constituted the only persons whose property physically abutted on the closed portion of Bethel Street, their consent would not justify the city council in closing a street, without public necessity, which afforded the only feasible means of access to the plaintiff's property. *Kinnear Mfg. Co. v. Beatty,* 65 Ohio St. 264, 62 N. E. 341, 87 Am. St. Rep. 600.

After a careful consideration of the record in this case, the applicable law, and the briefs of counsel, we conclude for the reasons stated, that the resolution passed by respondent vacating a part of Bethel Street is null and void; that the appellant has suffered special injury, has no adequate remedy at law, and is entitled to an injunction enjoining the vacation of Bethel Street. The cause will be remanded so that further steps may be taken, as the plaintiff may be advised, to carry this judgment into effect.

Judgment reversed.

BAKER, CJ., and STUKES and TAYLOR, JJ., concur.

OXNER, J., disqualified.